## THE CITY OF ROCHESTER *vs.* COLLINS.

Under a provision in the charter of a municipal corporation, authorizing it to pass and enact by-laws and ordinances *to abate and remove nuisances*, it has no power to pass an ordinance to *prevent* nuisances, or to impose penalties for the creation thereof.

But under a power to do all acts, make all regulations and pass all ordinances which they shall deem necessary for the *preservation of health*, and the suppression of disease, and to carry into effect and execute the powers granted by the charter, a municipal corporation has power to pass an ordinance prohibiting the depositing of dead animals, decayed vegetables, &c. in any public street, or upon any lot, &c. and imposing a penalty for a violation of such ordinance.

THIS was an appeal from a judgment of the Monroe county court. The action was originally commenced before a justice of the peace, to recover of the defendant a penalty of $10 for violating the sixth section of the ordinance of the city of

Rochester, in relation to nuisances, passed June 15, 1847. The defendant put in an answer, denying the charge, specifically and generally. On the trial before the justice, it was proved that the defendant, on the 31st of May, 1849, had caused a quantity of decayed vegetables, filth, &c. to be deposited on a lot in the 4th ward of the city, on the surface of the ground, and had allowed the same to remain there. The sixth section of the ordinance, for a violation of which the suit was brought, was duly read and proved. It was as follows :

' § 6. Any person who shall deposit, or cause to be deposited, any dead animal, fish, or putrid meat, entrails, shells of oysters or clams, decayed vegetables, or any other offensive substance, in or upon any public street, lane, or alley, or above the surface of the ground on any lot, or in any canal or any basin attached thereto, or on any bank thereof, or shall deposit any dead animal or putrid carcass, or any other substance which is now or may hereafter be prohibited from being deposited in any of the streets, lanes, or alleys, or upon any of the banks of any canal or river in the said city, in the Genesee river, or any mill-race, or who shall suffer or permit any stagnant or filthy water, or putrid or unwholesome meats, decayed vegetables, or other offensive substance, to remain on his or her lot, or in his or her house, or other building or cellar, or in or upon any boat in the Genesee Valley canal, the Erie canal, or Genesee river, within the limits of this city, he or she shall forfeit and pay a penalty of ten dollars for each offense, and shall also pay to the city of Rochester the expense and charge which the said corporation shall be put to in removing or abating any such nuisance. And the mayor, or any alderman or police justice, with any person in aid of him, may at any time in the day time enter into or upon any house, cellar, boat, or other place, and remove or abate such nuisance in such manner as he should judge best. And any person obstructing or hindering such mayor, alderman or police justice, or any person in aid of him, in the execution of his duty, shall forfeit and pay a penalty of twenty-five dollars."

The justice rendered a judgment in favor of the plaintiffs, for

$10 and the costs. On appeal to the county court that judgment was affirmed with costs.

*L. Farrar*, for the appellant.

*Wm. Breck*, for the respondents.

*By the Court*, JOHNSON, J. The judgment before the justice was warranted by the evidence, and in accordance with the sixth section of an ordinance of said city in relation to nuisances, passed June 15, 1847. It is objected, however, on the part of the defendant, that the common council of the city had no power or authority under the city charter to pass the ordinance in question, and that the same is void.

By title three, section ten, of the charter, (*Sess. L. of* 1844, *p.* 155,) the common council are authorized and empowered " to pass and enact such by-laws and ordinances for the good government of the .city," amongst other things, " for the benefit of the trade and commerce *and health thereof*, as they shall judge expedient, not repugnant to the general laws of the state. and for those purposes shall have authority 1. To make such orders, regulations and provisions," &c. amongst other things enumerated, " to abate and remove nuisances." By title eleven, of the charter, entitled " of the public health and cleanliness of the city," section two, the common council are authorized " to abate all nuisances of every description which are or may be injurious to the public health in any way, and in any manner they may deem expedient; and from time to time to do all acts, make all regulations, and pass all ordinances which they shall deem necessary or expedient for the preservation of health and the suppression of disease in the city, and to carry into effect and execute the powers hereby granted."

By section sixteen, of title three, of the charter, it is provided that in all cases where the common council have authority to pass ordinances on any subject, they may prescribe any penalty not exceeding $50 for a violation thereof; which penal-

ties may be sued for and recovered, with costs, in the name of the city of Rochester

Undoubtedly a municipal corporation must show a grant, either in express terms, or by necessary implication, for all the power and authority it undertakes to exercise. (*Sharp* v. *Speir*, 4 *Hill*, 85.) Indeed, the legislature have explicitly declared, (1 *R. S.* 600, § 3,) that no corporation, in addition to the general powers enumerated in the first section, and to those expressly given in its charter, "shall possess or exercise any corporate powers, except such as shall be necessary to the exercise of the powers so enumerated and given." Under the power given to the common council by the charter, to abate and remove nuisances, I am clearly of the opinion that the ordinance in question is unauthorized. It is the existence of the nuisance only which authorizes the common council to act under this grant of power. Under such a grant alone they would necessarily have no power to make regulations to prevent nuisances, or impose penalties for their creation.

But under the powers conferred by section two, title eleven, "to do all acts, make all regulations, and pass all ordinances which they shall deem necessary for the preservation of health, and the suppression of disease in the city, and to carry into effect and execute the powers hereby granted;" it seems to me the power to pass this ordinance is clearly given. Not, it is true, in express terms; but by necessary implication, upon the strictest rules of construction. For the preservation of health and the suppression of disease in the city, it would be highly expedient and necessary to prevent nuisances within its boundaries; and the means appointed in the charter are by regulation or ordinance. And wherever the right to pass an ordinance exists, the right to impose a penalty for its violation is expressly given by section sixteen, of title three. The sanitary powers conferred upon the common council by title eleven, were given for wise and beneficent purposes. The legitimate and proper exercise of them is of the first importance to the well being of every individual under the municipal government. And while these powers are not to be enlarged, even by an equitable con-

struction, courts should nevertheless be careful to see that they are not so abridged and weakened as to defeat the great ends for which they were given.

I am of the opinion that the ordinance is clearly within the powers granted by the charter, and that the verdict and judgment are warranted by the evidence.

Judgment of the county court affirmed.

[MONROE GENERAL TERM, December 3, 1850. *Welles, Selden* and *Johnson*, Justices.]